■ MARILYN C.Y., Appellant, v MARK N.Y. et al., Respondents. [883 NYS2d 710]—In a consolidated action for a divorce and ancillary relief, and proceeding to establish paternity pursuant to Family Court Act article 5, the mother appeals, as limited by her brief, from so much of an order of the Supreme Court, Suffolk County (Bivona, J.), dated June 27, 2007, as denied that branch of her cross motion which was to limit the court's consideration of the in camera interview with the subject children, held December 21, 2006, to factual matter that transpired prior to consolidation of the action and proceeding.

In a consolidated action for a divorce and ancillary relief, and proceeding to establish paternity pursuant to Family Court Act article 5, the mother appeals from two orders of filiation of the Supreme Court, Suffolk County (Bivona, J.), both dated October 19, 2007 (one as to each child), which, after a hearing, in effect, granted the petition, and adjudicated the petitioner, Charles D.B. II, to be the father of the two children who are the subject of this proceeding.

Ordered that the orders are affirmed, without costs or disbursements.

The two children who are the subject of this paternity proceeding are the youngest of six children born to the mother during her marriage to Mark N.Y. All parties acknowledge that Mark N.Y. is the biological father of the four older children. Only the mother challenges the claim of Charles D.B. II to paternity of the subject children, asserting that the doctrine of equitable estoppel should be applied to prevent him from asserting his paternity, and to dismiss his paternity petition.

"[I]n cases involving paternity, child custody, visitation and support, the doctrine of equitable estoppel will be applied only where its use furthers the best interests of the child or children who are the subject of the controversy" (*Matter of Charles v Charles*, 296 AD2d 547, 549 [2002]; *see Matter of Griffin v Marshall*, 294 AD2d 438 [2002]). "[T]he issue does not involve the equities between [or among] the . . . adults; the case turns exclusively on the best interests of the child" (*Matter of Shondel J. v Mark D.*, 7 NY3d 320, 330 [2006]; *see Matter of Gina L. v David W.*, 34 AD3d 810, 811 [2006]; *Matter of Griffin v Marshall*, 294 AD2d at 438). "[C]ourts are more inclined to impose equitable estoppel to protect the status of a child in an already recognized and operative parent-child relationship" (*Matter of Greg S. v Keri C.*, 38 AD3d 905, 905 [2007] [internal quotation marks omitted]; *see Matter of Shondel J. v Mark D.*, 7 NY3d at 327; *Matter of Antonio H. v Angelic W.*, 51 AD3d 1022, 1023 [2008]).

Applying these principles to the matter at bar, the evidence supports the Supreme Court's determination that application of the doctrine of equitable estoppel would not be in the best interests of the subject children. It is clear from the credible testimony and photographs that Charles D.B. II visited the subject children frequently from the time of their birth, participated in their birthdays and other milestone events, and took them on numerous outings, including, at least once a week, to visit with his parents and brother and sister-in-law. It is clear from his testimony, and from that of the subject children in an

in camera interview, that Charles D.B. II always held himself out as the father of the subject children and that, prior to their current confusion caused by the mother, they had recognized him as their father and called him "Daddy." The record supports the court's determination that the mother's testimony was not credible, as she persisted in denying facts that were clearly true, for example, that Charles D.B. II was present in the delivery room for the birth of each of the subject children, and in making assertions that were clearly untrue, e.g., that Charles D.B. II did not interact with the children when he visited.

Based on the above, the court properly concluded that, in this case, the "already recognized and operative parent-child relationship" (*Matter of Greg S. v Keri C.*, 38 AD3d at 905 [internal quotation marks omitted]; *see Matter of Shondel J. v Mark D.*, 7 NY3d at 327), was the relationship with Charles D.B. II, the children's biological father. Under these circumstances, "to apply the estoppel doctrine would have the very consequence which the doctrine was intended to prevent, that is, the [estrangement of] someone who, [after] years of concern and love," is the subject children's father in every respect (*Matter of Vilma J. v William L.*, 151 AD2d 758, 759-760 [1989]). Rivera, J.P., Dillon, Balkin and Austin, JJ., concur.